IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL NO. 3:11CV488-FDW-DSC

| | |
|---|---|
| MARK S. HENLEY,<br>   Plaintiff,<br><br>vs.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security Administration,<br>   Defendant. | )<br>)<br>)<br>)  **MEMORANDUM AND RECOMMENDATION**<br>)<br>)<br>)<br>)<br>)<br>) |

**THIS MATTER** is before the Court on Plaintiff's "Motion for Summary Judgment" (document #10) and "Memorandum in Support ..." (document #11), both filed February 6, 2012; and Defendant's "Motion for Summary Judgment" (document #15) and "Memorandum in Support..." (document #16), both filed May 4, 2012.

This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1), and these Motions are now ripe for disposition.[1]

Having considered the written arguments, administrative record, and applicable authority, the undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment be <u>denied</u>; that Defendant's Motion for Summary Judgment be <u>granted</u>; and that the Commissioner's decision be <u>affirmed</u>.

## I. PROCEDURAL HISTORY

Plaintiff filed his application for Supplemental Security Income ("SSI") on January 17, 2008,

---

[1]Pursuant to the Pretrial Scheduling Order entered on December 6, 2011, this matter is ripe upon the filing of Defendant's Motion and Memorandum. <u>See</u> Document #9. Local Civil Rule 7.1 (E) clarifies that the briefing schedule applicable under Rule 7.1 does not apply in Social Security appeals.

alleging that he became disabled on January 1, 2005 (Tr. 139-147). Plaintiff subsequently amended his onset date to December 19, 2008 (Tr. 23, 45, 166). Plaintiff's application was denied initially and on reconsideration. A hearing was held on November 10, 2009. (Tr. 36-79).

On February 17, 2010, the Administrative Law Judge ("ALJ") issued a decision denying Plaintiff benefits. (Tr. 20-31). The ALJ found that Plaintiff had not engaged in substantial gainful activity since his amended onset date. The ALJ also found that Plaintiff suffered from chronic obstructive pulmonary disease ("COPD") exacerbated by continued smoking, hepatitis C, and substance-induced mood disorder (Tr. 25), which were severe impairments within the meaning of the regulations, but did not meet or equal any listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1. Despite Plaintiff's impairments, the ALJ determined that he had the Residual Functional Capacity ("RFC")[2] to perform medium work,[3] with the limitations that he stand no longer than one hour at a time, walk no farther than two to three blocks at a time, avoid concentrated exposure to pulmonary irritants, be restricted to simple, routine, repetitive tasks, and avoid more than occasional interaction with co-workers or the general public (Tr. 27). The ALJ determined that in light of his RFC, age, education, and work experience, and based on the testimony of the vocational expert ("V.E."), Plaintiff could perform jobs existing in significant numbers in the national economy (Tr. 29-30). The ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act (Tr. 30).

---

[2] The Social Security Regulations define "Residual Functional Capacity" as "what [a claimant] can still do despite his limitations." 20 C.F.R. § 404.1545(a). The Commissioner is required to "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] Residual Functional Capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b).

[3] "Medium" work is defined in 20 C.F.R. § 404.1567(c) as follows:
> Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work.

By notice dated July 28, 2011, the Appeals Council denied Plaintiff's request for further administrative review.

Plaintiff filed the present action on September 30, 2011. Plaintiff argues that the ALJ erred in weighing the medical opinion evidence, formulating his RFC, submitting a hypothetical to the V.E. and failing to resolve a conflict between the V.E.'s testimony and the *Dictionary of Occupational Titles* ("*DOT*"). See Plaintiff's "Memorandum ..." at 1-2 (document #11). The parties' cross dispositive Motions are ripe for disposition.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971), and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

See also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays v. Sullivan, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d at 345; and Blalock v. Richardson, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION OF CLAIM

The question before the ALJ was whether Plaintiff became "disabled" as that term of art is defined for Social Security purposes.[4] Plaintiff first argues that the ALJ erred in his consideration of the opinion of the treating psychiatrist, Dr. Mary Christenbury. Plaintiff also asserts that the ALJ erred when he gave more weight to the opinion of the consultative psychiatrist, Dr. Charlotte Gibbs.

The Fourth Circuit has held that a treating physician's opinion need not be afforded controlling weight. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). A treating physician's opinion on the nature and severity of the alleged impairment is entitled to controlling weight only

---

[4]Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .
Pass v. Chater, 65 F. 3d 1200, 1203 (4th Cir. 1995).

4

if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. See 20 C.F.R. §§ 404.1527(d)(2) (2002); and Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001).[5] Therefore, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Mastro, 270 F.3d. at 178, citing Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). A treating source's opinion that rests upon a claimant's less-than-candid subjective complaints is entitled to minimal probative value. See Johnson v. Barnhart, 434 F.3d 650, 657 (4th Cir. 2005). Indeed, "[a]n ALJ's determination as to the weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies' or has not given good reason for the weight afforded a particular opinion." Christian v. Apfel, No. 98-1673, 168 F.3d 481, 1998 WL 911720, at *2 (4th Cir. Dec. 31, 1998) (per curiam, unpublished) (quoting Scivally v. Sullivan, 966 F.2d 1070, 1076-77 (7th Cir. 1992)) (internal citation omitted).

In October 2009, Dr. Christenbury completed a Medical Source Statement Concerning the Nature and Severity of an Individual's Mental Impairment and an accompanying letter. (Tr. 1356-1361). Dr. Christenbury opined that Plaintiff had marked limitations in his abilities to follow instructions and respond appropriately to criticism from supervisors; to get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; to complete a normal

---

[5]Plaintiff relies on an incorrect legal standard here. Plaintiff's argument that a treating physician's opinion may be disregarded only if there is persuasive contradictory evidence (Document #11 at 15) is contrary to more recent regulations. The cases cited by Plaintiff, Mitchell v. Schweiker, 699 F.2d 187 (4th Cir. 1983), Oppenheim v. Finch, 495 F.2d 396 (4th Cir. 1974), and Vitek v. Finch, 495 F.2d 1157 (4th Cir. 1971), predate the Commissioner's promulgation of the current regulation concerning treating physicians' opinions. See 20 C.F.R. § 416.927(d); 56 Fed. Reg. 36932 (Aug. 1, 1991). As this Court has recognized, this regulation superceded the Circuit's "treating physician rule," as articulated in those cases. See Pittman v. Massanari, 141 F. Supp. 2d 601, 608 (W.D.N.C. 2001) (noting that the current Social Security Administration regulations have redefined the treating physician rule).

5

work day and work week without interruptions from psychologically based symptoms; and to perform at a consistent pace without unreasonable rest periods. (Tr. 1357-1358). In her letter, Dr. Christenbury stated "[Plaintiff] told me he is unable to work and his problem is 'anger and not getting along with co-workers.'" (Tr. 1361).

The ALJ discussed Dr. Christenbury's October 2009 questionnaire as well as her accompanying letter, and considering the other evidence of record, stated that he gave her opinion "relatively little weight." (Tr. 29). The ALJ properly exercised his discretion in giving little weight to Dr. Christenbury's opinion pursuant to 20 C.F.R. § 416.927(d).

Dr. Christenbury's opinion was inconsistent with other substantial evidence of record. As noted by the ALJ, Dr. Christenbury opined on several marked areas of limitation, but the progress notes from VAMC indicate more moderate impairment during the relevant time period. (Tr. 29). Dr. Christenbury saw Plaintiff on five occasions between January 2009 and October 2009. (Tr. 1361). During this time she described moderate symptoms in line with the ALJ's findings.

On January 23, 2009, Plaintiff reported that he was sober. (Tr. 790). He said that he felt lonely and isolated. However, his chief complaints were related to COPD and an asbestos related lung condition. (Tr. 790). Plaintiff denied any suicidal or homicidal ideation. (Tr. 790). A mental status examination revealed him to be alert, attentive, oriented, and pleasant with good eye contact. (Tr. 791). Speech was not pressured and was coherent with no formal thought disorder. (Tr. 791). He described his mood as depressed, but his affect was stable and appropriate. (Tr. 791). His insight and judgment were fair. (Tr. 791). Dr. Christenbury diagnosed Plaintiff with Cocaine Dependence (in remission), and Impulse Control Disorder, not otherwise specified. (Tr. 791). Dr. Christenbury found a Global Assessment of Functioning ("GAF") score of 51, indicating moderate, nondisabling symptoms. (Tr. 791). See Diagnostic and Statistical Manual of Mental Disorders (4th ed. Text

6

Revision 2000) (DSM-IV-TR) at 33-34 (GAF considers psychological, social, and occupational functioning for a current period (i.e. at the time of the evaluation)).

On March 19, 2009, Plaintiff reported that he was not as lonely. He attended SAS/PTSD groups each week and continued to play guitar at his church. (Tr. 771). He felt encouraged and was going to help a neighbor build a deck on her house for extra income. (Tr. 771). A mental status exam revealed improved mood and a stable, appropriate affect. (Tr. 772). Plaintiff denied hallucinations, and suicidal or homicidal ideations. (Tr. 772). His insight and judgment were fair. (Tr. 772). Dr. Christenbury found that Plaintiff's GAF score was 55, again indicating only moderate symptoms. (Tr. 772). DSM-IV-TR at 34.

On August 4, 2009, Dr. Christenbury reported that Plaintiff had stopped taking his depression medication, bupropion, due to an allergic reaction. (Tr. 734). He complained of increased anxiety and anger with a positive depression screen. (Tr. 734). During a mental status examination, Plaintiff described his mood as depressed, anxious, and irritable. (Tr. 735). However, his affect was full range, and he denied hallucinations, delusions, and suicidal or homicidal ideations. (Tr. 735). Plaintiff's insight and judgment were fair. (Tr. 735). Dr. Christenbury found that Plaintiff's GAF score was 51, again indicating only moderate symptoms. (Tr. 735). DSM-IV-TR at 34. Dr. Christenbury started Plaintiff on new medication for anxiety and depression. (Tr. 736).

On September 8, 2009, Dr. Christenbury reported that Plaintiff had stopped taking his medication again. (Tr. 718). She reported that he continued to have problems with anger. (Tr. 718). During a mental status examination, Plaintiff described his mood as depressed, anxious, and irritable. (Tr. 719). His affect, however, was full range, and he denied hallucinations, delusions, and suicidal or homicidal ideations. (Tr. 719). His insight and judgment were fair. (Tr. 719). Dr.

Christenbury found that Plaintiff's GAF score was 51, again indicating only moderate symptoms (Tr. 720). DSM-IV-TR at 34. Dr. Christenbury discontinued Plaintiff's medication secondary to side effects. (Tr. 720). She subsequently started him on hydroxyzine pamoate as needed for anxiety. (Tr. 1025-1026). On October 2, 2009, Plaintiff underwent a depression screening at VAMC with negative results. (Tr. 702). On October 21, 2009, Dr Christenbury reviewed Plaintiff's medications. (Tr. 994-994).

Other notations from VAMC indicate moderate symptoms. On December 29, 2008, upon discharge from the substance abuse program, Plaintiff was cooperative with good eye contact and normal speech. (Tr. 695). He was appropriate to content, circumstantial at times, goal directed, and denied suicidal or homicidal ideation. (Tr. 695). Plaintiff's insight and judgment were fair. (Tr. 695). His condition was improved and a GAF score of 55 was noted. (Tr. 694-695).

Significantly, Plaintiff attended group therapy throughout 2009. While there were a couple incidents during this time involving angry outbursts (Tr. 1025, 1163), they quickly resolved. (Tr. 1020-1025, 1154). By October 2009, Plaintiff was attentive and actively participating in the group. (Tr. 996, 998). Plaintiff was open to insights, suggestions, and feedback offered by his peers and group facilitators. (Tr. 996, 998-1005). Plaintiff's thinking, mood, and behavior were described as appropriate in a group setting. (Tr. 996, 998-1005).

The evidence detailed above demonstrates moderate symptoms consistent with the ALJ's findings. Consistent with the ALJ's RFC finding, Dr. Christenbury's Medical Source Statement Concerning the Nature and Severity of an Individual's Mental Impairment stated that Plaintiff did not have a substantial loss in his ability to understand, remember, and carry out simple instructions, make simple work related decisions, or deal with changes in a routine work setting. (Tr. 1359). With respect to Plaintiff's ability to respond appropriately to supervision, co-workers, and usual

work situations, Dr. Christenbury's opinion was inconsistent with the progress notes from VAMC. Those notes included Dr. Christenbury's own notations, mental status examinations, GAF scores, and positive reports from group therapy sessions. The ALJ was therefore entitled to give her opinion little weight.

Dr. Christenbury's opinion was based largely on Plaintiff's subjective reporting. (Tr. 29). Dr. Christenbury stated in her October 2009 letter that Plaintiff "told me he is unable to work and his problem is 'anger and not getting along with co-workers.'" (Tr. 1361). It was proper for the ALJ to consider Dr. Christenbury's reliance on Plaintiff's subjective complaints. See Mastro, 270 F.3d at 178 (recognizing that an ALJ may accord little weight to a treating physician's opinion based mainly on a claimant's subjective complaints).

As noted by the ALJ, the findings of the consultative psychiatrist, Dr. Gibbs, were inconsistent with the marked limitations identified upon by Dr. Christenbury. (Tr. 29). Dr. Gibbs found Plaintiff to be alert and oriented. (Tr. 469). No significant abnormalities were noted on his mental status examination. (Tr. 469-470). While Dr. Gibbs stated that Plaintiff would have difficulties with anger management, the ALJ accounted for this in his RFC determination by limiting his contact with co-workers and the public. (Tr. 27). The V.E. testified that the jobs identified and ultimately relied upon by the ALJ could be performed by an individual with marked limitations in the ability to get along with co-workers or peers. (Tr. 73-74). The ALJ properly considered Dr. Gibbs' evaluation as a factor in weighing Dr. Christenbury's opinion and assessing Plaintiff's RFC.

The non-examining psychologists opined that Plaintiff could perform simple, routine, repetitive tasks in a less socially interactive work environment. (Tr. 29, 481, 631). These opinions were largely consistent with the evidence noted above showing moderate and not marked limitations. The ALJ properly relied upon these opinions to find that Plaintiff's limitations were less

9

significant than those found by Dr. Christenbury. See 20 C.F.R. § 416.927(f); Social Security Ruling ("SSR") 96-6p, 1996 WL 374180 (July 2, 1996) (stating that the opinion of a non-examining state agency medical source, insofar as it is supported by evidence in the case record, is recognized as that of a highly qualified physician who is an expert in the evaluation of the medical issues in disability claims under the Act.).

The ALJ relied on substantial evidence in giving Dr. Christenbury's opinion little weight. To the extent limitations were supported by the record - i.e. a need for simple, routine, repetitive tasks with limited social interaction - these were appropriately accounted for in the ALJ's RFC finding and the VE's testimony. (Tr. 27 at Finding 5, 65, 73-74).

Plaintiff next argues that the ALJ erred in finding that he could perform the exertional requirements of medium work. Specifically, Plaintiff alleges that most medium work requires an individual to stand for most of the day, and that this is inconsistent with the ALJ's finding that he could only stand for one hour at a time and walk only two to three blocks at a time. The ALJ's finding that Plaintiff could do medium work, as identified by the V.E., is supported by the record. Moreover, the ALJ's findings that Plaintiff could only stand for one hour at a time and only walk two to three blocks at a time are not inconsistent with the requirements of the medium work identified by the V.E.

In reaching his RFC finding, the ALJ considered the objective medical evidence, the treatment and examination notes, the opinions of the non-examining state agency physicians, and Plaintiff's testimony. The objective evidence and treatment notes show moderately severe obstruction due to COPD exacerbated by smoking. (Tr. 25, 663-671). However, in June 2009, Plaintiff reported that he was no longer tired, was able to walk without difficulty, and thought he might be able to return to work. (Tr. 663). Plaintiff also suffered from hepatitis C (Tr. 26), but did

10

not receive treatment due to chronic drug use. (Tr. 729-732). In August 2009, he was to attend a hepatitis basic class and follow-up. (Tr. 731-732). There are no significant notations regarding this condition after August 2009. There are also some notations of lower back pain, and x-rays of the lumbar spine revealed degenerative disc disease with mild spondylosis. (Tr. 731, 758, 760, 925, 1147, 1345). The examination findings were generally normal with full range of motion and negative straight leg raises. (Tr. 760, 857, 859, 1149, 1305, 1347). A sleep study done in June 2009 showed that Plaintiff had moderately severe obstructive sleep apnea, but no evidence in the record indicates further complaints or limitations from this condition (Tr. 649-659).

The consultative physician, Dr. Tuan Huynh, evaluated Plaintiff and found no significant abnormalities upon physical examination. (Tr. 466). There were no abnormalities in coordination, station, gait, extremities, musculoskeletal, or range of motion. (Tr. 466). Dr. Huynh opined consistent with the normal findings on examination that Plaintiff could stand and walk for six to eight hours in an eight-hour work day and lift up to fifty pounds with no significant postural limitations (Tr. 467).

The ALJ also considered the opinions of the non-examining physicians who reviewed the record. (Tr. 29, 543-550, 633-640). These physicians opined that Plaintiff could perform medium work, including the ability to stand and/or walk for a total of about six hours in an eight-hour work day (Tr. 544, 634). The ALJ was within his authority to afford weight to these opinions. See 20 C.F.R. § 416.927(f) and SSR 96-6p, 1996 WL 376180. This was appropriate given the consistency of the opinions with the other evidence of record.

Finally, the ALJ considered Plaintiff's statements in formulating the RFC. (Tr. 28-29). Plaintiff reported doing yard work and maintenance work for a friend and handy man work for his sister. (Tr. 28, 469). In March 2009, Plaintiff stated that he was going to help a neighbor build a

11

deck on her house. (Tr. 771). In May 2009, he did a significant amount of yard work for his sister. (Tr. 1137). In July 2009, he was working in a hot warehouse for two days. (Tr. 1094). At his hearing in November 2009, Plaintiff reported raking leaves, fixing cabinets, installing ceiling fans and doing other home improvements around his sister's house. (Tr. 59). These activities are not consistent with the limitations alleged by Plaintiff, and considered with the other evidence discussed above, support the ALJ's finding that Plaintiff could perform a range medium work. See Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005)(holding that a claimant's ability to engage in certain activities is inconsistent with an inability to perform basic physical work functions).

Plaintiff argues that this case should be remanded because the ALJ failed to ask a proper hypothetical question to the V.E. concerning his mental limitations. Plaintiff alleges that the ALJ's RFC included a limitation to "avoid more than occasional interaction with coworkers or the general public" while the hypothetical question to the V.E. included a restriction to "limited interaction with peers and the public." (Tr. 27 at Finding 5, 65). Defendant has acknowledged that the question to the V.E. and the ALJ's ultimate RFC finding were slightly different with respect to Plaintiff's social limitations (Tr. 27 at Finding 5, 65). While the ALJ's hypothetical question could have been more precisely aligned with the RFC, any error stemming from the discrepancy is not cause for remand since there is sufficient evidence in the record to support the ALJ's ultimate determination. See Dover v. Astrue, No. 1:11CV120, 2012 WL 1416410, *5 (W.D.N.C. Mar. 19, 2012) ("even assuming that the ALJ did err, such error by the ALJ was harmless because remand would not lead to a different result."); see also Morgan v. Barnhart, 142 F. App'x 716, 723 (4th Cir. 2005) (applying harmless error doctrine in a Social Security case).

The V.E. identified five medium level jobs that Plaintiff could perform in response to the ALJ's hypothetical question. Three of the jobs were referenced by the ALJ in his decision - Cook

Helper, Food Service Worker, and Dump Truck Driver (Tr. 30, 65-66, 77).[6] The V.E. testified that his testimony was consistent with the DOT except the DOT did not discuss the sit/stand requirements. (Tr. 66). See Cook Helper, DOT 317.687-010, 1991 WL 672752; Food Service Worker, DOT 319.677-014, 1991 WL 672771; Dump Truck Driver, DOT 902.683.010, 1991 WL 687697. Upon questioning by Plaintiff's counsel, the V.E. testified that Plaintiff would be able to perform the three jobs referenced by the ALJ even with a marked limitation in his ability to get along with co-workers or peers. (Tr. 73-74). The V.E. specifically noted that those jobs were independent and thus Plaintiff would not have to interact with others throughout the day. (Tr. 73-74). This testimony accounts for the occasional limitation found in the RFC. Moreover, at least two of the jobs identified by the VE are listed in the DOT as not requiring significant interaction with others. See Cook Helper, DOT 317.687-010, 1991 WL 672752; Dump Truck Driver, DOT 902.683.010, 1991 WL 687697. Thus, it was reasonable for the ALJ to rely upon the occupations identified by the V.E. in response to his hypothetical in determining that Plaintiff could perform other work existing in significant numbers in the national economy. (Tr. 30).

Plaintiff finally argues that the ALJ did not comply with the requirements of *SSR* 00-4p, 2000 WL 1898704 (Dec. 4, 2000)[7] because he failed to resolve conflicts between the V.E.'s

---

[6]The ALJ dismissed the V.E.'s identification of landscape specialist at the hearing due to the nature of Plaintiff's lung problem and did not further rely upon the V.E.'s identification of deliverer of merchandise (Tr. 30, 77).

[7]SSR 00-4p, 2000 WL 1898704, at *4, in relevant part, states:

> When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT. In these situations, the adjudicator will:
>
> • Ask the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT; and
> • If the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

testimony and the DOT related to the social demands and reasoning levels of the jobs identified by the V.E. The ALJ asked the VE if the testimony was consistent with the DOT, as required pursuant to *SSR* 00-4p, and the VE replied in the affirmative except that the DOT did not discuss the sit/stand requirement. (Tr. 66). Plaintiff suggests that there were other apparent conflicts with the DOT that should have been resolved.

The V.E. testified that an individual with marked limitations in the ability to get along with co-workers or others could perform the jobs of Cook Helper, Food Service Worker, and Dump Truck Driver. (Tr. 73-74). As noted above, the DOT states that the job of Cook Helper does not require significant interaction with others. See DOT 317.687-010, 1991 WL 672752. Therefore, the V.E.'s statement that his testimony was consistent with the DOT is reasonable and there is no apparent conflict with the DOT. While it is true that the DOT states that Food Service Worker entails significant interaction with others, it does not specifically address the limitations found in the ALJ's RFC. See DOT 319.677-014, 1991 WL 672771. Even if the VE's testimony did conflict with the DOT, remand would not be warranted given the identification of other jobs. See Dover, No. 1:11CV120, 2012 WL 1416410, *5 ("even assuming that the ALJ did err, such error by the ALJ was harmless because remand would not lead to a different result."); see also Morgan, 142 F. App'x at 723 (applying harmless error doctrine in a Social Security case).

The third job identified by the V.E., Dump Truck Driver, does not involve significant interaction with others according to the DOT. DOT 902.683.010, 1991 WL 687697.

Plaintiff also argues that there was an apparent conflict between the V.E.'s testimony that he could perform the jobs of Food Service Worker and Dump Truck Driver despite a limitation to "simple, routine, repetitive, tasks" and the DOT's classification of those jobs as having a GED reasoning level three. As Defendant points out, this Court has recently held that there is no apparent

14

conflict between an RFC limitation to simple, routine, repetitive, work and reasoning level three jobs. Thacker v. Astrue, No. 3:11CV246-GCM-DSC, 2011 WL 7154218, at *3-4 (W.D.N.C. Nov. 28, 2011).

Even assuming arguendo that the Food Service Worker job entailed significant interaction with others and could not be considered, there existed a significant number of the remaining jobs to support the ALJ's decision: Cook Helper (870,000 jobs nationally, 26,000 jobs in North Carolina) and Dump Truck Driver (184,000 jobs nationally, 4,000 jobs in North Carolina). (Tr. 30, 66). Courts look for the number of jobs to be "significant," not the percentage of those jobs in a given area. See, e.g., Hall v. Bowen, 837 F.2d 272, 275 (6th Cir. 1988) ("when there is testimony that a significant number of jobs exists for which a claimant is qualified, it is immaterial that this number is a small percentage of the total number of jobs in a given area"); Martinez v. Heckler, 807 F.2d 771, 775 (9th Cir. 1986) ("[t]he plain language of the regulations do[es] not contemplate a ratio analysis"); Daniels v. Apfel, 92 F.Supp.2d 1269, 1283 (S.D. Ala. 2000) ("the inquiry is not whether the number is statistically significant in relation to jobs available"); Lanier v. Bowen, 682 F.Supp. 938, 940 (N.D. Ill., 1988) ("[t]he requirement of 'significance' in the law applies to the absolute number of jobs and not the relative percentage").

Moreover, reviewing courts have held that significantly lower numbers of jobs than those at issue here constitute substantial evidence to support a nondisability finding. See Hall, 837 F.2d at 275 (between 1,350 to 1,800 jobs sufficient); Martinez, 807 F.2d at 775 (between 3,750 and 4,250 jobs sufficient); Daniels v. Apfel, 92 F.Supp.2d at 1283 (650 jobs sufficient); Hicks v. Califano, 600 F.2d 1048, 1051 n. 2 (4th Cir. 1979) ("We do not think that the approximately 110 jobs testified to by the VE constitute an insignificant number.")

Although the medical records establish that the Plaintiff experienced symptoms and mental

15

and emotional difficulties to some extent or degree, as the Fourth Circuit has noted, it is the ALJ's responsibility, not the Court's, "to reconcile inconsistencies in the medical evidence." Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976). Moreover, the facts found by the ALJ clearly support the ultimate conclusion that Plaintiff suffered from his combination of impairments, but was not disabled.

Simply put, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." Mickles v. Shalala, 29 F.3d 918, 923 (4th Cir. 1994)(citing Simmons v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)). This is precisely such a case, as it contains substantial evidence to support the ALJ's treatment of the medical records, Plaintiff's RFC and his ultimate determination that Plaintiff was not disabled.

## IV. RECOMMENDATIONS

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Plaintiff's "Motion for Summary Judgment" (document #10) be **DENIED**; that Defendant's "Motion for Summary Judgment" (document #15) be **GRANTED**; and that the Commissioner's determination be **AFFIRMED**.

## V. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo

review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Frank D. Whitney.

**SO RECOMMENDED AND ORDERED**.

Signed: May 9, 2012

*[signature]*

David S. Cayer
United States Magistrate Judge